**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 18-4176 JB

STERLING ISLANDS, INC.;
AL-ZUNI GLOBAL JEWELRY, INC.;
JAWAD "JOE" KHALAF; NADER
KHALAF; NASHAT "NASH" KHALAF;
and TAHA "TOM" SHAWAR,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Jawad "Joe" Khalaf's Objections to the Presentence Investigation Report, filed July 31, 2020 (Doc. 133)("J. Khalaf Objections"); and (ii) the United States' Objections to Jawad Khalaf Presentence Report [Doc. 127], filed July 31, 2020 (Doc. 138)("U.S. Objections"). The primary issue is whether, under § 3B1.1 of the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines"), a 2-level enhancement to Defendant Jawad Khalaf's base offense level is appropriate, because he is a majority owner of Defendant Sterling Islands, Inc., which imported Southwestern-style art into the United States that was not indelibly marked with its country of origin. The Court concludes that a 2-level enhancement is not appropriate, because the Plaintiff United States of America has not introduced any evidence that J. Khalaf acted as a manager, leader, or supervisor in the offense for which he was convicted. Accordingly, the Court sustains the J. Khalaf Objections and the U.S. Objections on this enhancement.

Although the parties agree that a 2-level enhancement is not appropriate, the United States Probation Office ("USPO") contends that J. Khalaf, "as the majority owner and president of Sterling Islands, Inc., . . . was directing his son, daughter, and any other employees associated with Sterling Islands, Inc. in supplying Philippine made jewelry to other known businesses and individuals within [southwestern United States]."  Second Addendum to the Presentence Report at 2, filed August 25, 2020 (Doc. 160)("Addendum").  The USPO also asserts that J. Khalaf directed "the flow of transactions" from Fashion Accessories 4 U, Inc., a manufacturer of Southwestern-style arts and crafts.  Addendum at 4.  J. Khalaf argues that the "preponderance of the evidence does not establish that Jawad Khalaf ever knew that Sterling Islands' jewelry would be sold to the consumer as authentic Native American made."   J. Khalaf Objections at 29.  TheUnited States with J. Khalaf and argues that, although J. Khalaf's role in his offense conduct was "critical to the underlying conduct," he did not order the Navajo-style canteens on which the Defendants' convictions are based.  U.S. Objections at 5.  The United States thus contends that J. Khalaf did not play a leadership role in his relevant offense conduct.  See U.S. Objections at 5-6.  As for the USPO's reliance on uncharged conduct in applying the enhancement, the United States maintains that it is "unaware of any leadership role" that J. Khalaf played.  U.S. Objections at 6.

Section 3B1.1 "provides a range of adjustments to increase the offense level based upon the size of a criminal organization and the degree to which the defendant was responsible for committing the offense."  U.S.S.G. § 3B1.1(c) cmt.  Section 3B1.1 states:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> (a)      If the defendant was an organizer or leader of the criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

(b)     If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

(c)     If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by **2** levels.

U.S.S.G. § 3B1.1 (bold in original).  Here, USPO asserts that a 2-level enhancement is proper, from which the Court infers that the USPO's position is that the Defendants were not involved in an extensive conspiracy.  See United States v. Wardell, 591 F.3d 1279, 1304 (10th Cir. 2009)("A two-level adjustment under § 3B1.1(c) applies whenever 'the defendant was an organizer, leader, manager, or supervisor in any criminal activity [involving less than five participants and that is not otherwise extensive].'" (quoting U.S.S.G. § 3B1.1(c)).  The Court thus focuses on the nature of J. Khalaf's role in the Defendants' offense conduct.  Among the factors a sentencing court should consider when weighing an aggravating role enhancement are:

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.  There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy.

U.S.S.G. § 3B1.1 Application Note 4.  The Tenth Circuit has "elaborated that '[i]n considering these factors, the sentencing court should remain conscious of the fact that the gravamen of this enhancement is control, organization, and responsibility for the actions of other individuals because § 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures.'"  United States v. Sallis, 533 F.3d 1218, 1223 (10th Cir. 2008)(quoting United States v. Torres, 53 F.3d 1129, 1142 (10th Cir. 1995)).  See United States v. Vigil, 998 F. Supp. 2d 1121, 1155 (D.N.M. 2014)(Browning, J.)(refusing to find that a nurse practitioner, who was illegally

distributing controlled substances, was a leader or organizer even though she was essential to the success of the drug trafficking scheme).  "'A defendant's participation in illegal but lower-level activities,' however, 'will not support application of the enhancement.'"  United States v. Vigil, 998 F. Supp. 2d at 1144-45 (quoting United States v. Sallis, 533 F.3d at 1223).

Although the USPO does not justify its position in detail, the Court infers that the USPO relies on J. Khalaf's status as the president of Sterling Islands, Inc. to conclude that § 3B1.1 applies.  See Addendum at 2-3.  As the Court discusses in a previous Memorandum Order and Opinion in this case, however, the USPO mistakenly equates all of Sterling Islands' business with J. Khalaf's offense conduct.  See United States v. Sterling Islands, No. CR 19-4176 JB, 2020 WL 4784825, at **7-8 (D.N.M. Aug. 18. 2020)(Browning, J.).  The evidence does not support this characterization.  The record contains proof of only one instance in which any of the Defendants falsely conveyed that products were American Indian-made; this incident involved a box of twelve Navajo-style canteens which Sterling Islands, Inc. imported on a table with American Indian-made jewelry and without clear disclaimers that the canteens were not American Indian-made, and which were sold at Al-Zuni Global.  See J. Khalaf PSR ¶ 37, at 10.  Although the United States Fish and Wildlife Service spent eleven years investigating Sterling Islands' sale of Southwestern-style arts and crafts from the Philippines, the United States has introduced no  other instance in which a Sterling Islands employee affirmatively misrepresented such arts and crafts as American Indian-made.  See generally Presentence Investigation Report, filed July 10, 2020 (Doc. 127)("J. Khalaf PSR").  The Court accordingly declines to equate all of J. Khalaf's role as Sterling Islands, Inc.'s president with his role in the offense.

The USPO relies, however, on the Fish and Wildlife Service's conclusion that "[m]any pieces of jewelry" which Sterling Islands, Inc. imported "were not indelibly marked with its

country of origin as required by law."  Addendum at 3 (citing 19 C.F.R. § 134.43)(emphasis omitted).  This reliance presents two problems.  First, the lack of indelible markings is not necessarily indicative of criminal conduct, because § 134.43 does not require indelible country-of-origin markings where it is commercially unfeasible to do so, and the United States makes no argument regarding this feasibility.  See 19 C.F.R. § 134.43(c)(3).  Second, there is no evidence that J. Khalaf imported arts and crafts lacking indelible markings with intent to pass the imported arts and crafts off as American Indian-made.  To the contrary, the United States documented several instances in which J. Khalaf and other Defendants took care to identify their products as imported, which is unsurprising given that the Defendants' named their store "Al-Zuni Global." J. Khalaf PSR ¶ 15, at 6 (emphasis added).  Accordingly, the Court may not equate all of J. Khalaf's orders and transactions through Sterling Islands, Inc. with his offense conduct, and so his managerial position at Sterling Islands, Inc. cannot alone support an aggravated-role enhancement.

In determining an enhancement's applicability, the Court may consider only relevant offense conduct -- that is, conduct that occurred during the offense's commission.  See U.S.S.G. § 1B1.3.  Here, there is no evidence that J. Khalaf directed any other person to engage in criminal conduct.  Instead, the USPO's conclusion relies on J. Khalaf's role as an essential figure, because he managed Sterling Islands, Inc., through which the Navajo-style canteens made their way to Al-Zuni Global, but "the sentencing court should remain conscious . . . [that] § 3B1.1[] is an enhancement for organizers or leaders, not for important or essential figures."  United States v. Sallis, 533 F.3d at 1223.  The evidence here does not support finding that J. Khalaf managed or organized any criminal conduct; it suggests only that J. Khalaf imported large quantities of Southwestern-style art over several years, and that, in one instance, J. Khalaf falsely conveyed that his imported art was American Indian-made.  Because the United States has not introduced any

evidence that J. Khalaf acted as a manager, supervisor, or leader in any criminal conduct, the Court declines to apply a 2-level enhancement under § 3B1.1.  With J. Khalaf's 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b), J. Khalaf's base offense level is thus 4.  See U.S.S.G. § 2B1.1(a)(2).  With a criminal history category of I, J.  Khalaf's Guideline sentencing range is 0 to 6 months imprisonment.  See U.S.S.G. Sentencing Table.

**IT IS ORDERED** that (i) Defendant Jawad "Joe" Khalaf's Objections to the Presentence Investigation Report, filed July 31, 2020 (Doc. 133), are sustained insofar as J. Khalaf objects to the § 3B1.1 enhancement; and (ii) the United States' Objections to Jawad Khalaf Presentence Report [Doc. 127], filed July 31, 2020 (Doc. 138), are sustained insofar as the United States objects to the § 3B1.1 enhancement.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Jonathan M. Gerson
Kristopher N. Houghton
Sean J. Sullivan
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Mark T. Baker
Matthew M. Beck
Peifer, Hanson & Mullins and Baker, P.A.
Albuquerque, New Mexico

*Attorneys for Defendants Sterling Islands, Inc.,*
*Jawad Khalaf, and Zaher Mostafa*

Ahmad Assed
Richard J. Moran
Law Office of Ahmad Assed
Albuquerque, New Mexico

*Attorneys for Defendant Nader Khalaf*

John W. Boyd
Nancy Hollander
Karen Grohman
Freedman Boyd Hollander Goldberg Urias & Ward, P.A.
Albuquerque, New Mexico

*Attorneys for Defendants Nashat Khalaf and Al-Zuni
Global, Inc.*